UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )   Case No. 4:23-cr-00470-SRC |
| YU-CHIEH HUANG et al., | ) ) ) |
| Defendants. | ) |

### Memorandum and Order

Petitioners Gang Lin and Pei Zhao ask the Court for an ancillary hearing under 21 U.S.C. § 853(n) to determine their rights to deposit-account funds forfeited to the United States in this criminal case. The United States moves to dismiss Lin and Zhao's petition under Federal Rule of Criminal Procedure 32.2(c)(1)(A), arguing that Lin and Zhao fail to state a claim to the funds. Because the Court lacks sufficient information to decide the petition on its merits, the Court denies the United States' motion to dismiss, grants Petitioners' request for an evidentiary hearing, and orders discovery under Rule 32.2(c)(1)(B).

**I.    Background**

**A.    Criminal proceedings**

In May 2024, a federal grand jury indicted seven defendants for wire fraud, money laundering, identity theft, conspiracy to commit fraud, fraudulently effecting transactions, and running an unlicensed money-transmitting business. Doc. 120. The United States later dismissed the indictment against one defendant, subject to that defendant's completing a federal diversion program. Docs. 295, 297. And the Clerk of Court reassigned another defendant to fugitive status. The remaining five defendants pleaded guilty to fraud- and money-laundering-

conspiracy charges.  *See* docs. 205, 207, 216, 257, 271.  In their guilty-plea agreements, these five defendants admitted that they engaged in a conspiracy to launder money on behalf of drug-trafficking organizations and criminal-fraud organizations that targeted elderly adults.  *See* doc. 205 at 4; doc. 207 at 5; doc. 216 at 5–6; doc. 257 at 5–6; doc. 271 at 6 (The Court cites to page numbers as assigned by CM/ECF.).  They further admitted that they served as "money mules" for a money-laundering organization—that is, they "collect[ed] and disperse[d] the proceeds of criminal activity in exchange for a set fee or a percentage of the funds collected."  Doc. 205 at 4; *see also* doc. 216 at 5; doc. 207 at 5; doc. 257 at 5; doc. 271 at 5–6.

Four defendants also admitted that they used their personal financial accounts and identifying information to "convert the illegal proceeds into cashier's checks made payable to Chinese nationals residing in the United States."  Doc. 205 at 5; *see also* doc. 207 at 6; doc. 216 at 7; doc. 257 at 5.  For example, one defendant, Tsz Kan, admitted that, in June 2022, he converted illegal proceeds into a cashier's check for $170,000 and deposited it into a Bank of America account ending in 8660.  Doc. 216 at 7.  And another defendant, Jiacheng Chen, admitted that he made similar deposits into the same bank account (totaling $615,000) between March and April of 2023.  Doc. 257 at 6–7.

Defendants admitted that the purpose of providing these cashier's checks to Chinese nationals was to assist them in evading Chinese currency restrictions.  *See* doc. 205 at 3; doc. 207 at 4; doc. 216 at 5, 7; doc. 257 at 4–5; doc. 271 at 5.  The People's Republic of China limits the amount of currency its citizens may transfer outside of China.  Doc. 205 at 3; doc. 207 at 4; doc. 216 at 5; doc. 257 at 4; doc. 271 at 5.  So, some Chinese nationals in the United States enter into agreements where they accept deposits of U.S. dollars in their U.S. bank accounts.  Doc. 205 at 3; doc. 207 at 4; doc. 216 at 5; doc. 257 at 4–5; doc. 271 at 5.  And in return, these Chinese

nationals exchange equivalent amounts of Chinese currency (known as "yuan," "renminbi," or "RMB") from their Chinese bank accounts to other accounts in mainland China. Doc. 205 at 3; doc. 207 at 4; doc. 216 at 5, 7; doc. 257 at 4–5; doc. 271 at 5.

During the investigation of this case, the United States asserts that it obtained federal seizure warrants and seized several bank accounts that allegedly contained proceeds of Defendants' money-laundering activity. Doc. 344 at 2; *see also* doc. 120 at 14. The seized property included the following:

a. $327,602.30 in funds seized from Bank of America account ending in #8860;

b. $2,035,326.31 in funds seized from Bank of America account ending in #7416;

c. $134,431.76 in funds seized from Bank of America account ending in #6209;

d. $2,912,201.61 in funds seized from Bank of America Private Bank account ending in #1831;

e. $60,000.00 in funds seized from JP Morgan Chase Bank account ending in #8620;

f. $349,904.90 in funds seized from East West Bank account ending in #4400; and

g. $1,029,032.53 in funds seized from JP Morgan Securities account ending in #1141.

Doc. 216 at 2; *see also* doc. 257 at 2; doc. 271 at 2.

In their guilty-plea agreements, Defendants Kan, Chen, and Kaiyu Wen admitted that these funds were subject to criminal forfeiture. *See* doc. 216 at 2; doc. 257 at 2; doc. 271 at 2. Thus, United States District Judge Matthew T. Schelp entered three Preliminary Orders of Forfeiture for these funds. Docs. 264, 277, 281. The orders stated that the account funds (except those in account #6209) were forfeited to the United States under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 as proceeds traceable to the money-laundering- and fraud-conspiracy charges. *See* doc. 264 at 1–2; doc. 277 at 1–2; doc. 281 at 2.

After Judge Schelp entered the orders of forfeiture, the United States mailed a copy of this order to Petitioners Gang ("Gavin") Lin and Pei ("Linda") Zhao (the purported owners of accounts #8860, #1831, #7416, and #1141) on May 14, 2025. *See* doc. 321-3; doc. 321 at ¶¶ 1, 17, 19. On June 13, 2025, Petitioners timely filed a verified petition for an ancillary hearing under 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2. Doc. 321. About one month later, the United States filed a "Motion to Dismiss Petition or, in the Alternative, to Permit Discovery." Doc. 344. Petitioners filed their response in opposition to the United States' motion, doc. 364, and the United States did not file a reply. Thus, the petition and motion are ripe for the Court's review.

      **B.**      **Petition for ancillary hearing**

In their petition, Petitioners Lin and Zhao allege the following facts, which the Court accepts as true for the purposes of the United States' motion to dismiss. *See* Fed. R. Crim. P. 32.2(c)(1)(A).

Petitioner Zhao is a naturalized United States citizen. Doc. 321 at ¶ 5. Her husband, Petitioner Lin, is a permanent resident of the United States in the process of obtaining his citizenship. *Id.* In 2019, Lin and Zhao immigrated to the United States from China on an EB-5 visa. *Id.* They are native Mandarin speakers with limited English-language skills. *Id.* They currently reside in Southern California, where there is "a sizable Chinese and Chinese American immigrant community." *Id.*

Over a decade ago, while Lin and Zhao still lived in China, they invested in real estate and private equity funds. *Id.* at ¶ 6. These investments "have resulted in profitable returns" for Lin and Zhao and "continue to be a source of income" for them. *Id.* They hold the "vast majority" of their wealth in Chinese financial institutions and private funds. *Id.* Despite this,

4

Lin and Zhao "have continuously paid U.S. income tax on the income derived from their assets located in China." *Id.*

Lin and Zhao needed to access additional funds from their Chinese bank accounts to pay for "family living expenses" for themselves, their young children, and their elderly mother. *Id.* at ¶ 7. One way to access these funds is to "informally exchange Chinese RMB for United States Dollars." *Id.* According to Petitioners, this informal exchange "is extremely common within the Chinese community due to the Chinese Government's capital control regimes," *id.*, which restrict foreign currency exchanges to $50,000 per year per adult, *id.* at ¶¶ 3, 9.

In 2021, Lin met Jianying ("Bill") Lu. *Id.* at ¶ 8. The following year, Lu told Lin that he could help Lin exchange his Chinese currency for United States Dollars, as he had done for others. *Id.* Petitioners reiterate that informal banking services like Lu's (known as "piaohaos") are "extremely common within the Chinese community due to the Chinese Government's restrictive capital control schemes." *Id.* at ¶ 9.

Petitioners state that Lu was Lin's exclusive contact for exchanging his Chinese RMB for United States Dollars. *Id.* at ¶ 10. And, as is normal for such transactions, "Petitioners do not know and have never met any of the counterparties to the transactions," including the defendants in this case. *Id.* And based on information and belief, Petitioners assert that the criminal defendants have no idea who Petitioners are, either. *Id.* Nor, they assert, does the United States have evidence that Petitioners participated in any criminal conduct. *Id.*

Once Lin discovered that the United States seized his funds because they were connected to a criminal case, he "voluntarily reached out" to the United States. *Id.* at ¶ 11. He explained to the United States "the circumstances involving the piaohaos" and "his lack of knowledge and involvement with respect to the underlying conduct in the criminal case." *Id.* And when

5

Petitioners told the United States that some of the seized account funds "had no relation to any currency exchange transactions," the United States "acquiesced and released approximately $2.7 million from account ending in #1831." *Id.*

## II.     Legal standards and applicable law

### A.     Ancillary proceeding under 21 U.S.C. § 853(n)

Section 853 of the Controlled Substances Act mandates that anyone convicted of a felony drug offense forfeit to the United States "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as a result of [the] violation." 21 U.S.C. § 853(a)(1); *see also* 28 U.S.C. § 2461(c) (noting that the procedures in section 853 "apply to all stages of a criminal forfeiture proceeding"). Section 853 also specifies the procedures third parties may use to assert their interest in property forfeited to the United States in a criminal proceeding. 21 U.S.C. § 853(n). Specifically, any person (other than the defendant) who "assert[s] a legal interest in property which has been ordered forfeited to the United States" may "petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2); *see also* Fed. R. Crim. P. 32.2(c)(1) (noting that a court "must conduct an ancillary proceeding" if a third party "files a petition asserting an interest in the property to be forfeited").

To prevail on a third-party claim under section 853, a petitioner must do three things. First, the petitioner must satisfy the pleading requirements under section 853(n)(3). Specifically, he must (1) sign the petition under penalty of perjury, (2) explain the nature and extent of his interest in the property, (3) discuss the time and circumstances surrounding his acquisition of that

interest, (4) supply any additional facts supporting his claim, and (5) specify the relief he seeks. 21 U.S.C. § 853(n)(3).

Second, the petitioner must satisfy both constitutional and statutory standing requirements. *United States v. Timley*, 507 F.3d 1125, 1129 (8th Cir. 2007). For constitutional standing, the petitioner must demonstrate "an ownership or possessory interest in the seized property." *Id.* (citation omitted); *see also United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003) (explaining that, to establish constitutional standing, a claimant "need only show a colorable interest in the property, redressable, at least in part, by a return of the property"). He can establish such an interest through "actual possession, control, title, and financial stake." *United States v. White*, 675 F.3d 1073, 1078 (8th Cir. 2012) (quoting *United States v. Premises Known as 7725 Unity Ave. N.*, 294 F.3d 954, 956 (8th Cir. 2002)). And for statutory standing, the petitioner "must have a legal interest." *Timley*, 507 F.3d at 1129. Importantly, a legal interest "encompasses only legally protected rights, not equitable rights." *Id.* To determine whether a petitioner has a valid interest, the court must "look to the law of the jurisdiction that created the property right." *Id.* at 1129–30.

Third, the petitioner must succeed on the merits at the ancillary hearing. *See id.* at 1130. He does this by showing, by a preponderance of the evidence, either (1) that he has priority of ownership over the subject property, or (2) that he was a bona fide purchaser for value of the subject property. *See* 21 U.S.C. § 853(n)(6)(A)–(B); *Timley*, 507 F.3d at 1130.

The priority-of-ownership ground under section 853(n)(6)(A) "embodies the relation-back doctrine," whereby "title to the forfeited property vests in the United States at the time of the defendant's criminal act." *Timley*, 507 F.3d at 1130. So, a party prevails on this ground only if "he had an interest in the property before the [United States'] interest vested." *Id.* Notably, a

7

petitioner's claim of superior title will fail if the subject property constitutes proceeds of a criminal offense. *Id.* This is because "the proceeds of an offense do not exist before the offense is committed, and when they come into existence, the [United States'] interest under the relation-back doctrine immediately vests." *Id.* (citing *United States v. Hooper*, 229 F.3d 818, 821–22 (9th Cir. 2000)).

In contrast, the bona-fide-purchaser ground under section 853(n)(6)(B) is "an exception to the relation-back doctrine." *Id.* To prevail on this ground, the claimant must show that: (1) he has "a legal interest in the forfeited property," (2) he acquired such interest as a "bona fide purchaser for value," and (3) he acquired the interest at a time when he was "reasonably without cause to believe that the property was subject to forfeiture." *Id.* at 1130–31.

If the petitioner satisfies all three requirements, "the court must enter a final order of forfeiture by amending the preliminary order as necessary to account for any third-party rights." Fed. R. Crim. P. 32.2(c)(2); *see also* 21 U.S.C. § 853(n)(6). Otherwise, he merits no relief, and the United States has full and clear title to the forfeited property. *See* 21 U.S.C. § 853(n)(7).

**B.      Motion to dismiss under Rule 32.2(c)(1)(A)**

On motion, the Court may dismiss a third-party forfeiture petition "for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A); *see also White*, 675 F.3d at 1077. The Court treats a motion to dismiss a third-party petition like a motion under Federal Rule of Civil Procedure 12(b). *See Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004); *United States v. Sigillito*, 938 F. Supp. 2d 877, 883 (E.D. Mo. 2013). Thus, the Court must assume as true the facts set forth in the petition. Fed. R. Crim. P. 32.2(c)(1)(A); *White*, 675 F.3d at 1077. And the Court must determine whether the complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

8

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "If a third party fails to allege in its petition all elements necessary for recovery, including those related to standing, the court may dismiss the petition without providing a hearing." *White*, 675 F.3d at 1077 (quoting *United States v. BCCI Holdings (Lux.) S.A. (Petitions of Gen. Creditors)*, 919 F. Supp. 31, 36 (D.D.C. 1996)).

### III.   Discussion

Lin and Zhao assert various grounds on which they claim the Court should exclude the deposit-account funds from forfeiture: (i) the United States lacked probable cause to seize the property; (ii) the United States' seizure of their entire deposit accounts was improper; (iii) Lin is a bona fide purchaser for value; and (iv) Zhao has superior right, title, and interest in the accounts. Doc. 321 at ¶ 23. The United States argues that the Court should dismiss the petition because Petitioners fail to state a valid claim. Doc. 344 at 8–9. The Court discusses each of these arguments in turn. Because the United States does not dispute that Petitioners satisfy the threshold pleading requirements of section 853(n)(3), *see generally* doc. 344, the Court first discusses whether Petitioners have standing.

#### A.   Standing

To determine standing at this stage, the Court reviews the Petitioners' allegations, which it must accept as true. Fed. R. Crim. P. 32.2(c)(1)(A). Petitioners first allege that they have standing to contest the forfeiture of the deposit-account funds. They state that they are "the owner, named account holder, or authorized trustee of each of the deposit accounts." Doc. 321 at ¶ 19; *see also* doc. 321-4. They also assert that they have a legally protectable interest under the laws of California (where they reside), because they exercised "dominion" over the deposit-account funds. *Id.* at ¶ 20. Accepting these allegations as true, the Court finds that Petitioners

9

have alleged a "financial stake" to create a "colorable interest" in the property at issue. *See White*, 675 F.3d at 1078; *One Lincoln Navigator*, 328 F.3d at 1013. And this alleged interest, if proven, would likely be valid under state law. *See United States v. JP Morgan Chase Bank Acct. No. Ending 8215 in the Name of Ladislao V. Samaniego, VL: $446,377.36*, 835 F.3d 1159, 1165–66 (9th Cir. 2016) (defining a "possessory interest" as "the exercise of dominion over property"); *United States v. $223,000.00 in U.S. Currency*, 692 F. Supp. 3d 933, 1000 (C.D. Cal. 2023) (noting same); *Possessory Interest*, *Black's Law Dictionary* (12th ed. 2024) (defining "possessory interest" as "[t]he present right to control property").

Zhao also asserts that she has "an undivided one-half interest in community property" under California law. *See* doc. 321 at ¶ 39. Accepting this allegation as true, the Court finds that Zhao has alleged a "financial stake" in the deposit-account funds, thus creating a "colorable interest" in the property at issue. *See White*, 675 F.3d at 1078; *One Lincoln Navigator*, 328 F.3d at 1013. And this alleged interest, if proven, also appears valid under California law. True, the Eighth Circuit has held that "[d]ivorce law does not govern a spouse's claimed interest in forfeited property." *United States v. Cochenour*, 441 F.3d 599, 601 (8th Cir. 2006). But California community property law creates a present and undivided interest that spouses enjoy during their marriage—in other words, this interest vests *before* divorce. *See* Cal. Fam. Code § 751 (West 2025) ("The respective interests of each spouse in community property during continuance of the marriage relation are present, existing, and equal interests."); Cal. Fam. Code. § 760 ("Except as otherwise provided by statute, all property . . . acquired by a married person during the marriage while domiciled in this state is community property."); *United States v. Lester*, 85 F.3d 1409, 1412–13 (9th Cir. 1996) (holding that defendant's wife had a nonforfeitable vested undivided half interest in community property under California law for

purposes of section 853(n) proceeding). Satisfied that Petitioners have properly alleged standing, the Court now turns to the merits of their petition.

**B.     Merits**

**1.     Probable cause for seizure of entire deposit accounts**

Lin and Zhao first assert that the United States lacked probable cause to seize the entirety of their deposit accounts. Doc. 321 at ¶¶ 25–30. They argue that, because the United States has not provided them a copy of the seizure warrants and supporting affidavits, they "cannot assess the validity of the seizure" and therefore "have been deprived of their basic due process rights." *Id.* at ¶ 25. They also argue that the United States improperly seized their deposit accounts because it did so "indiscriminately, and without identifying which specific fund(s) within the deposit accounts" resulted from illegal activity. *Id.* at ¶ 29.

The United States counters that section 853 "does not permit Petitioners to challenge the legality of the forfeiture in this ancillary proceeding." Doc. 344 at 8. But Petitioners respond that they are not merely "relitigating the forfeitability" of Defendants' interest in the subject property. Doc. 364 at 5. Rather, they are challenging "when, and to what extent, the [United States'] alleged <u>interest</u> in the seized property vested." *Id.* at 6 (emphasis in original). This, they argue, is relevant to their claim of superior title to the subject property. *Id.*

The Court notes that, in the initial forfeiture proceedings, Judge Schelp determined that a "requisite nexus" existed between the subject property and the Defendants' offenses to justify forfeiture in this case. *See* doc. 264 at 1–2; doc. 277 at 1–2; doc. 281 at 1–2. And the Eighth Circuit has made clear that Petitioners may not relitigate the outcome of those proceedings. *See*

11

*White*, 675 F.3d at 1077–78 (noting that an ancillary proceeding does not allow a third party "to relitigate the nexus between the criminal acts of [the defendant] and the forfeited proceeds").

Nor may they challenge the seizure of the property under the Fourth Amendment. In *United States v. Porchay*, the Eighth Circuit held that "[s]ection 853(n) does not give a third party the right to challenge the legality of the seizure." 533 F.3d 704, 710 (8th Cir. 2008). Instead, "the plain language of the subsection indicates that its purpose is to ensure that the property is not taken from someone with a right to the property that is superior to the defendant." *Id.* So, to the extent Petitioners seek to challenge the seizure and initial forfeiture of the deposit accounts, the record before the Court shows that they lack standing to do so. *Id.*; *see also* 21 U.S.C. § 853(k) (stating that a party may not challenge the forfeiture of the subject property except as provided in subsection (n)).

The Court notes, however, that the seizure warrants and affidavits in support may be relevant to Petitioners' claim of superior title under section 853(n)(6)(A), which the Court declines to dismiss for the reasons stated below. Thus, the Court declines to dismiss the petition on improper-seizure grounds as well.

### 2. Bona fide purchaser for value

Lin claims that he is a "bona fide purchaser for value" under section 853(n)(6)(B). Doc. 321 at ¶ 32; *see also id.* at ¶¶ 3, 21. As discussed, to prevail under this section, a petitioner must show that (1) he has "a legal interest in the forfeited property"; (2) that he acquired this interest "as a bona fide purchaser for value"; and (3) that, at the time he acquired his interest, he was

"reasonably without cause to believe that the property was subject to forfeiture." *Timley*, 507 F.3d at 1130–31; *see also* 21 U.S.C. § 853(n)(6)(B).

"Federal law controls whether a party qualifies as a [bona fide purchaser]" under section 853(n)(6)(B). *United States v. Huntington Nat'l Bank*, 682 F.3d 429, 433 (6th Cir. 2012). While this section does not define the term "bona fide purchaser for value," courts have found that the bona-fide-purchaser exception stems from "hornbook commercial law" and reflects "the common-law rule that an innocent purchaser for valuable consideration must be protected." *Id.* at 434 (citation modified); *see also United States v. Lavin*, 942 F.2d 177, 185 (3d Cir. 1991); *United States v. Petters*, 857 F. Supp. 2d 841, 846 (D. Minn. 2012).

Courts also look to state commercial law for "persuasive guidance" on the meaning of this term. *Huntington*, 682 F.3d at 435–36; *see Petters*, 857 F. Supp. at 846–47. And under California law, a "bona fide purchaser" is one who takes "in good faith and without notice." *See Cal. Cured Fruit Ass'n v. Stelling*, 75 P. 320, 321 (Cal. 1904); *Deutsche Bank Nat'l Trust Co. v. Pyle*, 220 Cal. Rptr. 3d 691, 697 (Cal. Ct. App. 2017); *Sw. Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir. 1986). With this in mind, the Court turns to the merits of Lin's bona-fide-purchaser claim.

### a. Legal interest

Lin asserts that he has a legal interest in the subject property because he is "the owner, account holder, or authorized trustee for each of the bank accounts" that compose the subject property. Doc. 321 at ¶ 33. As stated above, the Court finds that Lin has adequately pleaded his

ownership of the deposit accounts and his possessory interest over the deposit-account funds. He has therefore properly pleaded a legal interest in the subject property.

### b.     Bona fide purchaser

Lin argues that he obtained his legal interest in the deposit-account funds as a bona fide purchaser, because for each deposit of United States dollars that he received, he "sent equivalent outbound payments in Chinese RMB" from his bank accounts in China. Doc. 321 at ¶ 35; *see also* doc. 321-6, 321-7. He also states that the funds in his deposit accounts "are entirely derived from lawful income," because he "has duly reported and paid U.S. taxes on his income earned in China." *Id.* at ¶ 36.

The United States counters that Lin does not qualify as a bona fide purchaser for several reasons. First, it argues that "the operation of an unlicensed money transmitting service is in violation of federal law, and Petitioner Lin describes his use of such an illegal money remitting network." Doc. 344 at 11 (citing 18 U.S.C. § 1960(b)(1)(B)). Second, it posits that the bona fide purchaser exception "generally only protects claimants who have purchased 'tangible property,' not funds in a financial account." *Id.* at 12 (citing *United States v. BCCI Holdings (Lux.) S.A.*, 980 F. Supp. 2, 9 (D.D.C. 1997)). Finally, it asserts that "a claimant who obtains their interest in property as the result of an illegal contract cannot claim to be a bona fide purchaser." *Id.* (citing *S.E.C. v. Elmas Trading Corp.*, 683 F. Supp. 743, 753 (D. Nev. 1987)).

At the outset, the Court dispenses with the United States' argument that the bona-fide-purchaser exception protects only those who have purchased "tangible property." *See* doc. 344 at 12 (citing *BCCI*, 980 F. Supp. at 9). Indeed, other courts have held that the exception "appl[ies] to interests in both tangible and intangible property." *Huntington*, 682 F.3d at 435. And this approach is supported by the text of section 853, which defines the term "property" in

14

part to include "tangible *and intangible* personal property." 21 U.S.C. § 853(b) (emphasis added); *see also Huntington*, 682 F.3d at 435.

Second, the Court lacks sufficient evidence to find that Lin used an illegal currency exchange. Although the guilty-plea agreements discuss how Defendants lacked the licenses and registration necessary to engage in a money-transmitting business under federal law, *see* doc. 205 at 4; doc. 207 at 5; doc. 271 at 7, the United States did not obtain convictions for this conduct under 18 U.S.C. § 1960. Instead, Defendants pleaded guilty to fraud- and money-laundering conspiracy charges. *See* docs. 205, 207, 216, 257, 271. But even if the United States had obtained convictions for use of an unlicensed money-transmitting business under section 1960, the Court would still require more information about Lin's interactions with Lu (who was not a defendant in this case) to determine the nature of the currency exchange. Indeed, the only information the Court has about Lin and Lu's interactions comes from their WeChat and iMessage conversations. *See* docs. 321-1, 321-2. The Court cannot ascertain the meaning of these messages, however, because they are in Mandarin, rather than English. *See* docs. 321-1, 321-2. The Court therefore finds that an ancillary hearing is necessary on this issue and declines to dismiss the petition on this ground.

### c.     Reasonably without cause

Lastly, Lin states that he was "reasonably without cause" to believe the deposit accounts were subject to forfeiture. Doc. 321 at ¶ 37. He argues that he "lacked actual knowledge that certain funds deposited into his bank accounts [were] allegedly tied to illegal criminal activity." *Id.* And he alleges that he reasonably believed the United States currency he received was not

15

subject to forfeiture because the informal exchange of currency "is extremely common within the Chinese community." *Id.* at ¶ 38.

The United States counters that Lin was not without cause to believe these funds could be forfeited, because he admitted that he "was using an unlicensed money transmitting network to acquire money in violation of Chinese law." Doc. 344 at 13. It also posits that "a claimant cannot make the necessary showing of lack of knowledge based on willful blindness or by showing that he did not have actual notice that property was subject to forfeiture." *Id.* (citing *United States v. Medina Cuartes*, 155 F. Supp. 2d 1338, 1343 (S.D. Fla. 2001)).

Lin responds that he was reasonably without cause to believe his funds were forfeitable, because he received "official certified cashier's checks issued by highly regulated financial institutions." Doc. 364 at 12. Further, he argues that factual issues exist regarding (1) whether exchanging his Chinese currency for United States Dollars renders his United States Dollars subject to forfeiture, (2) his "inquiries to Mr. Bill Lu concerning the legitimacy of exchanging his funds," and (3) his "state of mind, cultural heritage, and the common nature of informal foreign exchange transactions." *Id.*

In determining whether a petitioner was reasonably without cause to believe that the subject property was forfeitable, "the standard is one of objective reasonableness." *Petters*, 857 F. Supp. 2d at 848. And while the Court agrees that this standard precludes "willful blindness" on the part of the petitioner and "imposes a duty of reasonable inquiry," *Medina Cuartes*, 155 F. Supp. 2d at 1343, the Court again finds that it lacks sufficient information to make this determination. As stated above, the Court requires additional information regarding Lin's interactions with Lu and other circumstances surrounding the exchange of Lin's Chinese assets

16

for United States currency. The Court therefore finds that an ancillary hearing is necessary on this issue and declines to dismiss the petition on this ground.

### 3. Superior title

Finally, Zhao asserts that she has superior right, title, and interest in the subject bank accounts because, under California law, she has "an undivided one-half interest in the community property." Doc. 321 at ¶ 39; *see also id.* at ¶¶ 3, 22. The United States, however, argues that Zhao's claim of superior title fails because Judge Schelp determined, based on the guilty-plea agreements, that the subject property "constitutes or was derived from criminal proceeds." Doc. 344 at 9. Therefore, under *Timley*, the United States argues, Zhao "can never have a successful claim under § 853(n)(6)(A)." *Timley*, 507 F.3d at 1130; doc. 344 at 9. Zhao agrees that she has no superior interest vis-à-vis the United States in criminal proceeds; however, she argues that "factual issues exist as to the [United States'] purported interest in the *entirety* of the seized accounts." Doc. 364 at 13 (emphasis added). Put differently, Zhao alleges that not all of the seized funds constitute criminal proceeds, and that she has a superior interest in any untainted funds.

The Court finds that a factual dispute exists regarding Zhao's claim of superior title to the deposit-account funds. This is especially true given that, after the United States and Petitioners held discussions in January 2025, the United States returned over $2.7 million from account #1831 to Petitioners. *See* doc. 321-5; *see also* doc. 321 at ¶ 11; doc. 344 at 6; doc. 364 at 6. Thus, it is unclear to the Court whether the entirety of the remaining seized funds constitute criminal proceeds. The Court therefore finds that a hearing is necessary on this issue and declines to dismiss the petition on this ground.

In sum, the Court finds that it cannot dismiss Lin and Zhao's petition on this record, so it denies the United States' motion to dismiss.  Doc. 344.  Consequently, the Court grants Lin and Zhao's request for an ancillary hearing.  Doc. 321.  The Court also notes that both sides have requested that, in the event of a hearing, the Court permit discovery under Federal Rule of Criminal Procedure 32.2(c)(1)(B).  *See* doc. 344 at 14; doc. 364 at 14–15.  As previously stated, the Court finds that additional evidence is necessary to determine Lin and Zhao's rights to the deposit-account funds.  The Court therefore grants the parties' request for discovery.

### C. Conclusion

Accordingly, the Court grants Petitioners' [321] motion for an ancillary hearing.  The Court denies the United States' [344] motion to dismiss the verified petition but grants, in the alternative, the United States' [344] request to permit discovery under Federal Rule of Criminal Procedure 32.2(c)(1)(B) and 32.2(b)(3).  The Court sets a status conference in this matter for January 28, 2026 at 10:00 a.m. in Courtroom 14-North.  Counsel for both the United States and Petitioners must attend.  No later than January 21, 2026, the United States and Petitioners must submit a joint proposed scheduling plan that includes the following:

(a)  a discovery plan that includes:

   (i)  any agreed-upon provisions for disclosure or discovery of electronically stored information;

   (ii)  any agreements the parties reach for asserting claims of privilege or of protection;

   (iii)  a date or dates by which the parties will disclose information and exchange documents pursuant to Federal Rule of Civil Procedure 26(a)(1);

(iv) whether the parties should conduct discovery in phases or limit discovery to certain issues;

(v) dates by which each party must disclose its expert witnesses' identities and reports, and whether serial or simultaneous disclosure is appropriate in the case, and dates by which each party must make its expert witnesses available for deposition;

(vi) whether the presumptive limits of 10 depositions per side—as set forth in Federal Rule of Civil Procedure 30(a)(2)(A)—and 25 interrogatories per party—as set forth in Federal Rule of Civil Procedure 33(a)—should apply in this case, and if not, the reasons for the variance from the rules;

(vii) a date by which the parties will complete discovery; and

(viii) any other matters pertinent to the completion of discovery.

(b) dates for filing any motions to dismiss, motions for summary judgment, and motions under Federal Rules of Evidence 702 or 703 (colloquially referred to as *Daubert* motions);

(c) the earliest date by which this case should reasonably be expected to be ready for hearing; and

(d) any other matters counsel deem appropriate for inclusion in the joint proposed scheduling plan.

So ordered this 5th day of January 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE